**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**

**Grand Jury Sworn in on June 14, 2024**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO.** |
| | : | |
| **v.** | : | **GRAND JURY ORIGINAL** |
| | : | |
| **ABOUZAR RAHMATI,** | : | **VIOLATIONS:** |
| | : | |
| | : | **18 U.S.C. § 371** |
| **Defendant.** | : | **(Conspiracy to Act as an Agent of a Foreign Government Without Prior Notice to the Attorney General)** |
| | : | |
| | : | **18 U.S.C. § 951** |
| | : | **(Acting as an Agent of a Foreign Government without Prior Notice to the Attorney General)** |

**INDICTMENT**

The Grand Jury charges that, at all times material to this Indictment, on or about the dates stated below:

**Introduction**

1. From in or around December 2017 through in or around June 2024, Defendant **ABOUZAR RAHMATI ("RAHMATI")** conspired with Iranian government officials and intelligence operatives to act in the United States under their direction and control as an agent to advance the interests of the Islamic Republic of Iran ("Iran").

2. RAHMATI, age 42, was a naturalized U.S. citizen who was born in Iran. RAHMATI obtained a Bachelor of Science in Power Systems from the Power & Water Institute of Technology in Tehran, Iran, and a Master of Science in High Voltage and Power Systems from the University of Tehran, in addition to a Master of Science and PhD from a U.S. University.

3. From on or about June 22, 2009, until on or about May 24, 2010, RAHMATI served as a conscript with the rank of First Lieutenant in the Islamic Revolutionary Guard Corps ("IRGC")—an Iranian military and counterintelligence organization under the authority of the Supreme Leader of Iran.[1] While in the IRGC, RAHMATI received firearms and explosives training. After being discharged from the IRGC, RAHMATI lied to the U.S. government regarding his military service with the IRGC and his military training in order to, among other things, gain employment as a U.S. government contractor.

4. Upon completion of his military service with the IRGC, RAHMATI received a Mandatory Military Service Completion Card, which included RAHMATI's picture and personal information, the start and end dates of his military service, his military identification and enlistment office numbers, and information about his military service. The front and back of RAHMATI's Mandatory Military Service Completion Card are depicted in the photographs below.

[1] On or about April 15, 2019, the U.S. Department of State designated the IRGC as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act for the IRGC's direct involvement in terrorist plotting, support for terrorism, and hostage-taking.

| کد تخصصی | مدرک تحصیلی | رسته خدمتی | قد | گروه خون | رنگ چشم |
|---|---|---|---|---|---|
| ۰ | فوق لیسانس | پیاده | ۱۷۹ | B+ | مشکی |

| تاریخ خاتمه خدمت | تاریخ شروع خدمت | مدت خدمت انجام شده | مدت قانونی خدمت | وضعیت آموزش نظامی |
|---|---|---|---|---|
| ۱۳۸۹/۰۳/۰۳ | ۱۳۸۸/۰۲/۰۱ | ۹ ماه و ۱۸روز | ۱۸ ماه | ۲۵۶ |

| یگان ترخیص کننده | شماره دفتر تحصیلی | شماره دفتر اساس | حوزه اعزام کننده | شماره سریال |
|---|---|---|---|---|
| وزارت علوم | ------ | ۲۵۴۹۸۴۰۱۶۱ | ۶ و ٤ ایلام | ۶۰۴۳۳۴۰۲ |

توضیحات: ۶ ماه و ۱۲ روز کسرجبهه و ۲ ماه کسر تحصیلی دارد

تذکر: جعل و هرگونه سوء استفاده از این کارت موجب پیگرد قانونی است.

از یابنده تقاضا می شود کارت را به نزدیکترین یگان نیروی انتظامی تحویل و یا به صندوق پست بیندازد.

تهران صندوق پستی: ۲۱۳-۱۶۳۱۵

5. In or around August 2017, RAHMATI offered his services to the Iranian government through a senior Iranian government official who previously worked in Iran's Ministry of Intelligence and Security and with whom RAHMATI had attended university in Iran. Later that year, in December 2017, RAHMATI travelled to Iran where he met with Iranian intelligence operatives and government officials and agreed to act as an agent of the Government of Iran. Iranian government officials tasked RAHMATI with obtaining information about the U.S. solar energy industry, providing that information to Iranian officials, and conducting future communications under a cover story based on purported discussions about research with fellow academics. RAHMATI agreed.

6. Upon returning to the United States in early 2018, RAHMATI obtained various private and open-source materials related to the U.S. solar energy industry and provided them to an official from the office of Iran's Vice President for Science and Technology in response to tasking from Iranian government officials.

7. RAHMATI also applied for multiple positions with private companies and U.S. government entities that would afford him access to sensitive information. In January 2019, RAHMATI obtained a position with U.S. COMPANY 1, which provided support to the Federal

Aviation Administration ("FAA"). In this position, RAHMATI worked on a contract related to the power and electrical architecture of the FAA's National Airspace System ("NAS"), a network of controlled and uncontrolled airspace across the United States (hereinafter, "the NAS Contract").

8. In response to tasking from Iranian officials, and in furtherance of his role as an agent of the Government of Iran, RAHMATI exploited his employment with U.S. COMPANY 1 by downloading at least 172 GB of U.S. COMPANY 1 files, including sensitive access-controlled FAA documents related to the NAS, NAS Airport Surveillance Radar systems, and radio frequency data. RAHMATI stored those files on removable media, which he took to Iran, where he provided sensitive documents to the Government of Iran in or around April 2022.

9. Thereafter, in or around April 2022, in response to tasking from Iranian government officials, RAHMATI sent additional information relating to solar energy, solar panels, the FAA, U.S. airports, and U.S. air traffic control towers to his brother, IRANIAN NATIONAL 1, so that IRANIAN NATIONAL 1 would provide those files to Iranian intelligence on behalf of RAHMATI.

10. Other members of the conspiracy included:

a. IRANIAN INTELLIGENCE OFFICERS 1, 2, and 3, who all worked for the intelligence and security apparatus of Iran;

b. IRANIAN GOVERNMENT OFFICIAL 1, who was the Vice President of Iran for Science and Technology and the head of the Iran National Elites Foundation[2] from 2013 to 2021; and

c. IRANIAN GOVERNMENT OFFICIAL 2, who worked in Iran's Vice-Presidency

[2] The Iran National Elites Foundation was established by Iran's Supreme Council of Cultural Revolution and uses incentives—such as scholarships, research funding, government provided housing in Iran, and exemptions from military service—to encourage Iranian professionals to return to Iran to share knowledge in advanced science, technology, engineering, and mathematic fields to enhance Iran's economic and military position.

for Science and Technology in or around November 2017 and later worked in an Iranian Government ministry which focused on increasing energy efficiency and promoting global energy development.

11. At no time was RAHMATI a duly accredited diplomatic or consular officer; an officially and publicly acknowledged and sponsored official or representative of Iran; or an officially and publicly acknowledged and sponsored staff member or employee thereof. At no time did RAHMATI notify the Attorney General, whose office in the U.S. Department of Justice is located in the District of Columbia, that RAHMATI would and did act in the United States as an agent of a foreign government and official.

**The Conspiracy**

12. Beginning in or around December 2017 and continuing until at least in or around June 2024, in the District of Columbia and elsewhere, RAHMATI and others known and unknown to the grand jury, including IRANIAN NATIONAL 1, IRANIAN INTELLIGENCE OFFICERS 1, 2 and 3, and IRANIAN GOVERNMENT OFFICIALS 1 and 2, knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, Title 18, United States Code, Section 951.

**Purpose of the Conspiracy**

13. The purpose of the conspiracy was for RAHMATI to act as an agent of the Government of Iran in the United States, without providing prior notice to the Attorney General, in order for RAHMATI to provide non-public U.S. government and private industry information to the Government of Iran, and to conceal the purpose of the conspiracy and the acts committed in furtherance thereof.

**Manner and Means**

14.     Defendant RAHMATI, and other persons whose identities are known and unknown to the grand jury, including IRANIAN NATIONAL 1, IRANIAN INTELLIGENCE OFFICERS 1, 2 and 3, and IRANIAN GOVERNMENT OFFICIALS 1 and 2, carried out the conspiracy though the following means, among others, by:

a.  Meeting with members of the conspiracy and of the Government of Iran's security and intelligence services in Iran;

b.  Communicating with other members of the conspiracy using a cover story;

c.  Applying for and obtaining employment with U.S. companies, including U.S. COMPANY 1, to obtain information for the benefit of the Government of Iran;

d.  Collecting non-public information from U.S. companies and the U.S. government for the benefit of the Government of Iran;

e.  Providing open source and non-public information from U.S. companies and the U.S. government to officials of the Government of Iran; and

f.  Concealing and deleting communications made in furtherance of the conspiracy.

**Overt Acts in Furtherance of the Conspiracy**

15.     During and in furtherance of the conspiracy, and to affect the objects thereof, Defendant RAHMATI, IRANIAN NATIONAL 1, and other co-conspirators known and unknown to the Grand Jury, including IRANIAN INTELLIGENCE OFFICERS 1, 2, and 3, and IRANIAN GOVERNMENT OFFICIALS 1 and 2, committed the following overt acts, among others:

a.      In or around December 2017, RAHMATI met with two Iranian intelligence

officers, IRANIAN INTELLIGENCE OFFICERS 1 and 2, in Iran and discussed his research regarding power grids and solar power.

b.      In or around December 2017, RAHMATI went to a second meeting in Iran with IRANIAN INTELLIGENCE OFFICERS 1 and 2, who introduced RAHMATI to two Iranian government officials, including IRANIAN GOVERNMENT OFFICIALS 1 and 2. IRANIAN GOVERNMENT OFFICIAL 1 tasked RAHMATI with obtaining a specific annual report on solar energy. The Iranian government officials stated that it was difficult for Iran to manufacture solar cells because of U.S. sanctions and tasked RAHMATI with suggesting a company to buy that could manufacture equipment for solar panels.

c.      Also at the second meeting in Iran, in or around December 2017, the Iranian government officials directed RAHMATI that future communications would take place under the guise of a cover story based on fellow academics reaching out to RAHMATI about academic topics of mutual interest.

d.      Also at the second meeting in Iran, in or around December 2017, IRANIAN GOVERNMENT OFFICIAL 1 gave RAHMATI a business card for a different individual whose title was Deputy of Council & Manager of Technology Promotion Division at the Energy Technology Council of the Vice-Presidency for Science and Technology. The business card included an email address and a website with the domain "isti.ir," which corresponds to the public-facing website for the Iranian Vice-Presidency for Science and Technology. This business card is depicted in the photograph below.



Vice-Presidency for Science and Technology
Energy Technology Council
[redacted]
Deputy of Council
& Manager of Technology Promotion Division
Tel: [redacted]
Fax: [redacted]
[redacted]

e. In or around late December 2017, after RAHMATI had returned to the United States, IRANIAN GOVERNMENT OFFICIAL 2 emailed RAHMATI to ask for articles or reports on topics related to solar energy.[3] Consistent with the cover story, IRANIAN GOVERNMENT OFFICIAL 2 stated that he was a PhD student writing a dissertation on solar energy who had met with RAHMATI in Iran.

f. In or around January 2018, IRANIAN GOVERNMENT OFFICIAL 2 tasked RAHMATI with obtaining statistics related to the development of photovoltaic systems,[4] which are used in solar electricity production.

g. On or about February 5, 2018, RAHMATI emailed IRANIAN GOVERNMENT OFFICIAL 2 five files on solar energy in the United States that were responsive to tasking from IRANIAN GOVERNMENT OFFICIALS 1 and 2.

h. In or around June 2018, RAHMATI created a folder on a 20-terabyte hard drive (the "20TB Hard Drive") labeled "For IR." As of June 2024, the "For IR" folder contained approximately 450 documents from RAHMATI's current and previous

---

[3] Unless otherwise noted, all email communications referenced herein were in Farsi.

[4] Photovoltaic systems convert sunlight into electrical energy.

employers about U.S. solar technology and U.S. power infrastructure, including information about power substation schematics and facility locations for an identified U.S. electrical company. In addition, the "For IR" folder contained the five attachments that RAHMATI had previously emailed to IRANIAN GOVERNMENT OFFICIAL 2 on or about February 5, 2018.

i.     Upon his return to the United States from his travel to Iran, beginning in or around January 2018, RAHMATI drafted and submitted numerous applications for employment at U.S. companies and U.S. government entities where he would have access to sensitive information, including information about U.S. critical infrastructure. In or around January 2019, RAHMATI received an offer of employment with U.S. COMPANY 1.

j.     On or about January 24, 2019, RAHMATI emailed IRANIAN INTELLIGENCE OFFICER 2 that he was "in the process of moving to and joining a new company" and that RAHMATI and IRANIAN INTELLIGENCE OFFICER 2 could "work more effectively if it is finalized." RAHMATI also wrote that he was "very interested in coming to Iran this year" to "see you" and "dear old friends too."

k.     To work on U.S. COMPANY 1's NAS Contract with the FAA, the FAA required that RAHMATI complete and sign a Questionnaire for Non-Sensitive Positions ("SF-85"). On or about January 31, 2019, RAHMATI falsely answered "Not Applicable" in response to a question in Section 13 of the SF-85 that required the applicant to list their military service. The question included the following instruction: "If your service was with other than the U.S. Armed Forces, identify the country for which you served."

l.      Beginning in or around February 2019 RAHMATI was employed as a Power System Engineer by U.S. COMPANY 1, working on power sustainment issues under contracts with the FAA.

m.      On or about February 26, 2019, IRANIAN INTELLIGENCE OFFICER 2 emailed RAHMATI that he hoped they could see each other again as soon as possible. On or about February 28, 2019, RAHMATI responded to IRANIAN INTELLIGENCE OFFICER 2 that he hoped there would be an opportunity to meet "[c]onsidering the new company and work related preoccupations."

n.      On or about December 4, 2019, IRANIAN INTELLIGENCE OFFICER 2 emailed RAHMATI stating that he looked forward to seeing RAHMATI. On or about December 22, 2019, RAHMATI replied to IRANIAN INTELLIGENCE OFFICER 2 that he hoped to travel to Iran in the coming months.

o.      On or about December 24, 2019, RAHMATI created a folder on the 20TB Hard Drive called "[U.S. COMPANY 1]-12242019," in which he saved hundreds of proprietary, technical FAA documents.

p.      On or about February 2, 2020, IRANIAN INTELLIGENCE OFFICER 2 emailed RAHMATI to "not forget our souvenir."

q.      On or about February 4, 2020, RAHMATI created a folder on the 20TB Hard Drive called "[U.S. COMPANY 1]-02042020," in which he saved hundreds of proprietary, technical FAA documents.

r.      On or about January 26, 2021, IRANIAN INTELLIGENCE OFFICER 2 emailed RAHMATI that he needed to meet with RAHMATI to coordinate with him on the construction of solar cells. IRANIAN INTELLIGENCE OFFICER 2 noted that a meeting

in Iran would be "more suitable," but that he could possibly meet with RAHMATI in other countries.

s.      On or about September 8, 2021, in relation to RAHMATI's upcoming travel to Iran, IRANIAN INTELLIGENCE OFFICER 2 emailed RAHMATI to "not forget our souvenir."

t.      On or about September 19, 2021, RAHMATI emailed IRANIAN INTELLIGENCE OFFICER 2 that his travel to Iran depended on resolving a small problem.

u.      Thereafter, between on or about September 19, 2021, and in or around February 2022, RAHMATI deleted emails with IRANIAN INTELLIGENCE OFFICER 2.

v.      Prior to his travel to Iran, in or around March 2022, RAHMATI communicated with IRANIAN NATIONAL 1 about his planned itinerary and other logistical matters, after which IRANIAN NATIONAL 1 provided information about RAHMATI's upcoming travel to Iran to Iranian intelligence. As part of RAHMATI's correspondence with IRANIAN NATIONAL 1 about RAHMATI's upcoming trip, on or about March 6, 2022, IRANIAN NATIONAL 1 sent a message to RAHMATI via an encrypted messaging application in the Luri language that said, "The airplane might be full, tell the head of intelligence that I am coming."

w.      In or around March 2022, on the night before his flight to Iran, RAHMATI copied several hundred documents about U.S. aviation infrastructure to a portable USB drive, including documents establishing electrical standards used by NAS air traffic control facilities. The USB drive contained a folder with a title that was a variation of the name of U.S. COMPANY 1, which contained approximately 1.7 GB of data and approximately

1,700 files. Those files included internal FAA files about U.S. aviation facilities with location data, addresses, phone numbers, and other facility information; non-public, technical power and electrical protection information for several Air Route Traffic Control Centers; a structural assessment of a large U.S. airport; radio frequencies supporting aviation; and information technology security assessments. These documents, taken in their totality, would give a person unfamiliar with NAS facility engineering a reasonable understanding of how the NAS power and electrical architecture is configured.

x.      On or about March 18, 2022, RAHMATI flew from Washington, D.C. to Tehran, Iran. Among other items, RAHMATI brought the portable USB drive with him to Iran.

y.      In or around April 2022, while in Iran, Iranian intelligence contacted RAHMATI to set up an in-person meeting. Thereafter, RAHMATI called IRANIAN NATIONAL 1 to inform him of the meeting.

z.      The next day, on or about April 10, 2022, RAHMATI and IRANIAN NATIONAL 1 met with two Iranian intelligence operatives, IRANIAN INTELLIGENCE OFFICERS 1 and 3. At that meeting, IRANIAN INTELLIGENCE OFFICERS 1 and 3 told RAHMATI and IRANIAN NATIONAL 1 that Iran had lots of enemies and needed to fight those enemies by gaining knowledge. IRANIAN INTELLIGENCE OFFICERS 1 and 3 indicated they were looking for any information, even if RAHMATI did not think it would be helpful, but specifically mentioned needing new ideas and technology that they did not have in Iran. IRANIAN INTELLIGENCE OFFICERS 1 and 3 further told RAHMATI and IRANIAN NATIONAL 1 that if RAHMATI brought new ideas to Iran, they could provide free and/or low interest loans or grants to finance RAHMATI and IRANIAN NATIONAL

1's projects.

aa.     The next day, on or about April 11, 2022, RAHMATI copied the contents of a file titled "Airport List" into a new file and provided some or all of the contents of the USB drive to Iranian intelligence.

bb.     In or around April 2022, after returning to the United States, RAHMATI emailed IRANIAN NATIONAL 1 various files relating to solar energy, solar panels, the FAA, U.S. airports, and U.S. air traffic control towers for IRANIAN NATIONAL 1 to provide to Iranian intelligence.

cc.     Thereafter, RAHMATI deleted this email and called IRANIAN NATIONAL 1 and asked him to delete the email. IRANIAN NATIONAL 1 also deleted the email.

## COUNT ONE
**(Conspiracy to Act as an Agent of a Foreign Government Without Prior Notice to the Attorney General)**

16. The allegations in paragraphs 1 through 15 are realleged and incorporated here by reference.

17. From in or around December 2017 to in or around June 2024, in the District of Columbia and elsewhere, the defendant, **ABOUZAR RAHMATI**, did knowingly and intentionally conspire, combine, confederate, and agree together with other individuals whose identities are both known and unknown to the Grand Jury, to act within the United States as an agent of a foreign government and a foreign official, without prior notification to the Attorney General, whose office in the Department of Justice is located in the District of Columbia.

(**Conspiracy to Act as an Agent of a Foreign Government Without Prior Notice to the Attorney General**, in violation of Title 18, United States Code, Section 371; Title 18, United States Code, Section 951)

## COUNT TWO
**(Acting as an Agent of a Foreign Government Without Prior Notice to the Attorney General)**

18. The allegations in paragraphs 1 through 15 are realleged and incorporated here by reference.

19. Between on or around September 2019 and in or around June 2024, in the District of Columbia and elsewhere, the defendant, **ABOUZAR RAHMATI,** who acted in furtherance of the conspiracy alleged in Count One, did act within the United States as an agent of a foreign government and a foreign official, without prior notification to the Attorney General, whose office in the Department of Justice is located in the District of Columbia.

(**Acting as an Agent of a Foreign Government Without Prior Notice to the Attorney General,** in violation of Title 18, United States Code, Section 951)

A TRUE BILL

FOREPERSON

Matthew M. Graves/JSB

MATTHEW M. GRAVES
U.S. ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA